UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re: Zota Petroleums, LLC,                     Case No. 11-35079-DOT
      Debtor,                                          Chapter 7

## MEMORANDUM OPINION

Before the court is the motion of D&MRE, LLC,  for recognition of its sublessee rights under a sublease rejected by debtor. The motion is opposed by LAP Petroleum, LLC, which argues that it purchased the underlying lease from debtor free and clear of any interest asserted by D&MRE. Resolution of the issue requires an analysis of the interplay between §§ 363 and 365(h) of the Bankruptcy Code.

The court finds that in this case, the provisions of § 365(h), which give the sublessee the right to retain its rights under the lease, apply, and D&MRE is entitled to the quiet enjoyment of those rights.

**Facts and Issues Presented.** The facts in this case are largely undisputed. Debtor Zota Petroleums, LLC, was the lessee under a lease agreement with Kelmont, LLC, for certain real property located in King William County, Virginia. In turn, Debtor leased its interest in that same property to D&MRE, LLC.

Debtor leased sixteen gas stations and convenience stores in central Virginia. The trustee appointed in this case, originally filed under chapter 11

1

of the Bankruptcy Code,[1] filed his motion ("the Sale and Assumption Motion")
for entry of orders authorizing the sale of substantially all of debtor's assets,
establishing bid procedures for the sale of the assets, and authorizing the
assumption and assignment of leases and executory contracts, among them
the lease between Kelmont and debtor. The Sale and Assumption Motion was
granted by order entered October 21, 2011.

On October 24, 2011, in connection with the proposed sale and
assumption and assignment of leases, the trustee filed his notice of the
assumption and assignment of fifteen leases, as well as various subleases and
executory contracts, and setting forth the proposed cure amounts for those
contracts and leases. The Kelmont lease was included in the leases that the
trustee proposed to be assumed. On November 22, 2011, the trustee also filed
a motion to reject certain leases and executory contracts ("the Rejection
Motion"). Among the leases sought to be rejected was the sublease between
debtor and D&MRE.

In accordance with the Sale and Assumption Motion and the order
granting it, an auction was subsequently held, and LAP Petroleum, LLC, was
the successful bidder. The transaction was styled in the same manner as was
the Sale and Assumption Motion, including both the sale of assets and the
assumption and assignment of executory contracts and leases. The asset

---

[1] On Jan. 20, 2012, subsequent to the events referred to in this
Memorandum Opinion, debtor's case was converted to one under chapter 7 of
the Bankruptcy Code.

2

transaction was approved by order entered by the court on November 30, 2011. The order approving the transaction provided in part that "[t]o the extent of applicable law, the sale of the Assets shall vest LAP with good title to the Assets, and the Assets shall be free and clear of any and all liens encumbrances and any and all 'claims' as defined in §101(5) of the Bankruptcy Code) . . . other than as provided in the [Asset Purchase Agreement]." (The Asset Purchase Agreement is referred to from time to time in this opinion and in other relevant documents as the "APA.")

The order approving the asset transaction further authorized the trustee to assume and assign the sixteen leases and executory contracts listed in the order, including the Kelmont lease, to LAP at the closing of the asset sale. Paragraph 8 of the order provided that:

> Each of the Assumed and Assigned Contracts set forth on Schedule 1 to this Order constitute executory contracts or unexpired leases within the meaning of section 365 of the Bankruptcy Code and will be assumed without further order of the Court by the Trustee and assigned to LAP effective upon the Closing. The assumption of any liabilities under the Assumed and Assigned Contracts by LAP shall constitute a legal, valid and effective delegation of all liabilities thereunder to LAP and shall divest the Trustee and the Debtor of all liability with respect to such Assumed and Assigned Contracts.

The order also provided that LAP would pay the cure amounts due for the assumption and assignment of each lease. The order recites that "LAP is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of sections 363(m) and

3

(n) of the Bankruptcy Code with respect to the sale, all of the Assets and the

Assumed and Assigned Contracts." [sic]

The APA contained the following relevant language:

Subject to the terms and conditions of this Agreement and the
Sale Order, Seller shall sell, convey, transfer, assign and deliver
to Buyer or to one or more of its Affiliates as Buyer may
designate, free and clear of all Liabilities, and Buyer or one or
more of its designated Affiliates shall purchase and acquire from
Seller, all of Debtor's right, title and interest in (a) all the assets
set forth or referred to in Schedule 1.1(a) (the "Assets") and (b) all
the Contracts and Leases set forth in Schedule 1.1(b) (as may
otherwise be amended by agreement of the parties) (collectively,
the "Assumed and Assigned Contracts"), wherever located, in all
cases only to the extent of the Debtor's interests and only to the
extent transferable (collectively, the "Purchased Assets").
Schedule 1.1(b) sets forth a list of all Contracts to be assumed
and the estimated Cure Amount for such Contract set forth
opposite its name.

Exhibit A, attached to the APA, was titled "Assignment and Assumption of

Contracts" and provided for the consummation of the assumption and

assignment of, among other things, twelve leases and five fuel supply

agreements, including the Kelmont lease. Exhibit A purported to be in

satisfaction of the obligation of the trustee to execute the assumption and

assignment, as that obligation was set out in Sections 3.3.2 and 3.4.2 of the

APA.[2] The leases and contracts set forth in Exhibit A were identical to the

leases and contracts set forth in Schedule 1.1(b) to the APA.

---

[2] The executed copy of the APA was attached to the trustee's opposition
memorandum. [Docket 348]. No party has objected to the introduction of that
document.

The Rejection Motion was granted by the court by separate order on

the same date that the asset sale was approved.

D&MRE has filed a motion seeking a determination that § 365(h)(1)(A)

of the Bankruptcy Code gives it, as sublessor, the ability to retain its rights

under the rejected sublease.[3] That section provides that:

> (h)(1)(A) If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and--
>> (i) if the rejection by the trustee amounts to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any agreement made by the lessee, then the lessee under such lease may treat such lease as terminated by the rejection; or
>> (ii) if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.

D&MRE further pleads that it elects to retain its rights pursuant to the

provisions of § 365(h)(1)(A)(ii). LAP objects to the motion, arguing that the

asset purchase agreement provides that "Buyer shall assume no liability or

obligation of the debtor" [¶2.2] and asserting that the sale of debtor's assets

free and clear pursuant to § 363 of the Bankruptcy Code makes § 365(h)

---

[3] D&MRE pleads that LAP, as successor to debtor's lease with Kelmont, has notified D&MRE that it intends to seeks possession of the property, thus presenting the "case or controversy" necessary for the court's jurisdiction.

inapplicable. LAP also argues that D&MRE's motion is an impermissible

attack on the November 30, 2012, order approving the asset transaction.

Finally, it argues that the D&MRE motion is barred by the doctrines of *res

judicata* and collateral estoppel.

Additional finding of fact may be contained in the discussion of law

that follows.

**Conclusions of law.** The issue may be distilled to whether the

assignment of the assumed Kelmont lease extinguished the § 365(h) rights of

D&MRE, debtor's sublessee, when that assignment was made as part of a

transaction including both the sale of assets free and clear pursuant to the

provisions of § 363 of the Bankruptcy Code and the assumption and

assignment of various leases and executory contracts pursuant to § 365 of the

Bankruptcy Code. LAP argues that because of the "sale free and clear"

provisions of the APA, it obtained the Kelmont lease free and clear of

D&MRE's interest.

The court, in evaluating the arguments put forth by the parties, first

examines the transactions among the parties. It seems beyond dispute that

the trustee and LAP, in structuring the transaction at issue, intended to

transfer all of the assets of debtor and all of the interests of the debtor in the

leases and executory contracts to LAP. The Sale and Assumption Motion and

the order approving it were executed to combine the sale and the assumption

and assignment aspects in one document. The APA and the order approving

the final sale and the assumption and assignment were structured similarly, with all elements of both sale and assumption and assignment being combined in a single document.

Regardless of the unitary nature of the documents, however, the documents are all quite specific that certain assets were to be sold and certain leases and executory contracts were to be assumed and assigned. Schedule 1 attached to the order approving the sale and assignment listed the cure amounts required for sixteen leases and executory contracts; it listed the cure for the Kelmont lease as $41,607.83. The order, as noted above, provided that LAP would be responsible for payment of the cure amount.

LAP argues that the protections of § 363(f) of the Bankruptcy Code, which provides that the trustee may sell property of the debtor "free and clear of any interest in such property of an entity other than the estate,"[4] govern. It points out that the Sale and Assumption Motion, the order approving it, and the order approving the final sale and assumption transaction all provide that the sale of debtor's assets is to be free and clear of liens, claims, encumbrances and interests (hereinafter referred to as a "sale free and clear"). LAP further argues that a sale of assets free and clear of the interests of any other party may include the sale of a lease. In support of its argument, LAP relies heavily upon the Seventh Circuit case of *Precision Industries, Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537 (7th Cir. 2003.)

---

[4] Section 363(f) prohibits sales free and clear of liens and other encumbrances under certain conditions not at issue here.

In *Qualitech*, debtor Qualitech had granted to Precision a ground lease for $1 a year for a period of ten years. During those ten years, Precision would construct and operate a supply warehouse to provide supply services for Qualitech. At the end of the ten-year period, Qualitech had the right to purchase the warehouse for $1. The year after the execution of the lease, Qualitech filed a chapter 11 bankruptcy petition, and substantially all of its assets were sold at auction. Precision did not object to the sale, which was conducted pursuant to the "free and clear" sale authority of § 363(f) and was approved by court order. There was no separate assumption and assignment of the Precision lease in connection with the sale, and despite negotiations relative thereto, the parties never agreed upon an assumption of the lease. Thus, the lease was *de facto* rejected.

Precision asserted that it retained its leasehold rights after the sale pursuant to § 365(h) and that the purchaser of debtor's assets had impermissibly taken possession of the leased property. The bankruptcy court found that the purchaser owned the property free and clear of the leasehold interest, but the district court reversed, noting the conflict between §§ 363(f) and 365(h) and finding that the legislative history supported a finding that the sale was ineffective to extinguish the lessee's § 365(h) rights after rejection. *Precision Indus. Inc., v. Qualitech Steel SBQ, LLC*, No. 2001 IP00-0247-C-H/G, WL 699881, at *14 (S.D. Ind. 2001). The district court also noted

that the sale order stated that it was made pursuant to § 363 as well as § 365, and that the order was ambiguous as to which provision controlled.

The Seventh Circuit reversed the district court, holding that the sale in fact had extinguished the rights of Precision. The court concluded that the provisions of § 365(h) were inapplicable if a lease were sold as part of a § 363(f) sale. It noted that the lessee was not without protection, as § 363(e) gave the lessee the right to request adequate protection of its interest in the property. It further noted that § 365(h) applies only to rejected leases, and in the case of Precision, there had not been an actual lease rejection.

*Qualitech* is the only circuit court decision to date that addresses the interplay between §§ 363(f) and 365(h). Lower court cases on the issue are split. Cases holding that, as in *Qualitech*, the § 365(h) rights of a tenant may be extinguished by a § 363 sale generally rely on two canons of statutory construction. The first is that the court should afford a statute its plain meaning. In *South Motor Co. v. Carter-Pritchett-Hodges, Inc. (In re MMH Automotive Group, LLC),* 385 B.R. 347 (Bankr. S.D. Fla. 2008), the court examined the  statutes and found that as there is nothing in § 365(h) that specifically prohibits a § 363 sale when there is a tenant in possession, the plain meaning of § 363 allowing a sale free and clear prevails. The court found that omission compelling, remarking that "if Congress intended section

365(h) to trump a debtor's right to sell property, it could have expressly

provided that limitation." *Id*. at 366.[5]

The second canon relied upon is that courts should interpret statutes

so as to "avoid conflicts between them if such construction is possible and

reasonable." *Qualitech*, 327 F.3d at 544. In *Qualitech*, the Seventh Circuit

relied upon the fact that § 363(e) gives a tenant a right to seek adequate

protection. Thus, it reasoned, the tenant was protected, holding that:

> Where estate property under lease is to be sold, section 363
> permits the sale to occur free and clear of a lessee's possessory
> interest-provided that the lessee (upon request) is granted adequate
> protection for its interest. Where the property is not sold, and the
> debtor remains in possession thereof but chooses to reject the lease,
> section 365(h) comes into play and the lessee retains the right to
> possess the property. So understood, both provisions may be given
> full effect without coming into conflict with one another and without
> disregarding the rights of lessees.
>
> We are persuaded that it is both reasonable and correct to
> interpret and reconcile sections 363(f) and 365(h) in this way. It is
> consistent with the express terms of each provision, and it avoids the
> unwelcome result of reading a limitation into section 363(f) that the
> legislature itself did not inscribe onto the statute. Congress
> authorized the sale of estate property free and clear of "*any* interest,"
> not "any interest *except* a lessee's possessory interest."

---

[5] LAP points to the case of *Micron Technology, Inc. v. Qimonda* (*In re
Qimonda AG Bankruptcy Litigation)*, 433 B.R. 547 (E.D. Va. 2010), in which
the district court, in addressing whether a different provision of § 365 applied
in a cross-border bankruptcy proceeding, utilized the plain language canon of
statutory interpretation, noting that had Congress intended all § 363 sales to
be subject to § 365's provisions, it could have so provided. However, that
comment arose in the context of a Chapter 15 case analyzing the application
of a different subsection of § 365 and balancing considerations of comity, and
while the court notes the comment, finds it is not dispositive in this case.
(The § 365 issue in *Qimonda* was whether the bankruptcy court had correctly
determined whether § 365(n) applies automatically in a chapter 15
proceeding." *Id.* at 551.)

*Id*. at 548. In *MMH Automotive Group*, the court also determined that there was no conflict between the statutes, as they could be read in such a way as to make each effective, although it did not reach as clear a result as did the court in *Qualitech*, merely stating that there was no conflict. 385 B.R. at 367.

*In re Haskell, L.P.*, 321 B.R. 1 (Bankr. D. Mass. 2005) is representative of cases holding that a lease may not be sold in a § 363(f) sale in an attempt to evade a tenant's § 365(h) rights. In *Haskell*, the debtor sought to sell real property free and clear of a leasehold interest. In addition, the debtor filed a motion to reject the executory contract, which motion was granted prior to the decision on the sale motion. The lessee objected to the sale, arguing that the sale free and clear was inconsistent with the § 365(h) relief provided to a tenant whose lease was rejected by a debtor. It also requested a determination that it was entitled to the remedies provided to it in that section. In resolving the issue, the court noted the split in case law on the issue, citing, among others, the *Qualitech* case. However, the court ultimately held that the § 363(f) sale of the leasehold interest was impermissible because under the provisions of § 365(h), the tenant could not be forced to accept money for its rejected lease. "If the Court were to grant the Debtor's Sale Motion, the provisions of § 365(h) would be eviscerated. In other words, the Debtor would be doing indirectly what it could not do directly, namely, dispossessing [the tenant]." *Id*. at 9. The court also noted that the tenant had not been offered adequate protection for its leasehold interest, in any rate.

11

Cases relied upon by the court in *Haskell* include *In re Churchill Props. III, Ltd. P'ship*, 197 B.R. 283 (Bankr. N.D. Ill. 1996); *In re Taylor*, 198 B.R. 142 (Bankr. D.S.C. 1996); and *LHD Realty Corp. v. Metro. Life Ins. Co. (In re LHD Realty Corp.)*, 20 B.R. 717 (Bankr. S.D. Ind. 1982). *See also In re Samaritan Alliance, LLC*, No. 07-50735, 2007 WL 4162918 (Bankr. E.D. Ky. Nov. 21, 2007) (agreeing with the ruling in *Haskell* and holding that a debtor's sublessee was entitled to the protections of § 365(h) after a § 363 sale of substantially all of the debtor's assets was ordered).

The rationale behind cases prohibiting the extinguishment of a sublessee's § 365(h) rights through a § 363 sale has been based in part upon the statutory construction principle that the more specific provision should prevail over the general. *See In re Churchill Props. III, Ltd. P'ship*, 197 B.R. 283, 288 (Bankr. N.D. Ill. 1996). In that case, the court noted that "Section 365(h) is clear and specific in providing for certain rights and remedies available to the lessee after rejection of its lease. Since Congress decided that lessees have the option to remain in possession, it would make little sense to permit a general provision, such as Section 363(f), to override its purpose." *Id*. It further noted that permitting a § 363 sale free and clear of the interests of the debtor's sublessee would make the provisions of § 365(h)(1)(A)(ii) nugatory with respect to non-debtor lessees. *Id*.

Cases disapproving the § 363 sale of leases to extinguish § 365(h) rights also rely upon the legislative history of §365(h), which is indicative of

12

the desire of Congress to protect the rights of a debtor's tenant. A 1978

Senate Report remarked that under the terms of § 365(h), "the tenant will

not be deprived of his estate for the term for which he bargained." S. Rep. No.

95-989, at 60 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5846. The Section-

by-Section Analysis of the 1994 amendments to the Bankruptcy Code  further

reflect a Congressional desire to protect the rights of those who are lessees of

debtors:

> This section clarifies section 365 of the Bankruptcy Code
> to mandate that lessees cannot have their rights stripped away
> if a debtor rejects its obligation as a lessor in bankruptcy. This
> section expressly provides guidance in the interpretation of the
> term "possession" in the context of the statute. The term has
> been interpreted by some courts in recent cases to be only a
> right of possession (citations omitted). This section will enable
> the lessee to retain its rights that appurtenant to its leasehold.
> These rights include the amount and timing of payment of rent
> or other amounts payable by the lessee, the right to use, possess,
> quiet enjoyment, sublet and assign.

Bankruptcy Reform Act of 1994, Section-by-Section Analysis, 140 Cong.Rec.

H10752–01 (Oct. 4, 1994).

Cases relied upon by LAP are factually distinguishable. In *Qualitech*,

the lease rejection had been a *de facto* one, and there is no mention in the

case that there had been an assumption and assignment of the leases at

issue. Further, the lease in that case was an economic disadvantage for the

purchaser of the debtor's assets. In *Cheslock-Bakker & Assoc., Inc. v. Kremer

(In re Downtown Athletic Club of New York City, Inc.*, No. M-47 (JSM), 2000

WL 744126 (S.D.N.Y. June 9, 2000), a chapter 11 case, there was a confirmed

plan providing for the sale of a building free and clear. The debtor filed suit against three tenants in the building who, while they did not have leases, had filed complaints against the debtor under the New York City rent control laws. The debtor's suit requested a declaration that the tenants had no possessory rights post-sale and requested that defendants be enjoined from any proceeding seeking to obtain any such interest. The bankruptcy court ruled that the tenants' rights survived the sale, but the district court found that the § 363 sale had extinguished any right the tenants had under § 365(h). The court also noted § 365(h) "applies when a debtor-lessor remains in possession of its property and rejects a lease, not when the debtor-lessor sells property subject to an interest (such as a lease) free and clear of that interest pursuant to Section 363." *Id*. at *5. Most importantly, it noted that it was not addressing the issue of whether a § 363 sale could divest a tenant of its rights after the rejection of unexpired leases, which is the case before this court.

The case of *In re R.J. Dooley Realty, Inc.*, No. 09-36777, 2010 WL 2076959 (Bankr. S.D.N.Y. May 21, 2010), is also factually inapposite. In that case, the Chapter 11 trustee in a single-asset real estate case filed a motion to approve bid procedures for the sale of the debtor's single asset. While the trustee initially proposed the sale as one subject to existing leases, after an objection and a hearing thereon, the sale was eventually  allowed as a sale free and clear of existing leases. This was all accomplished without notice to

tenants, who were then notified of the subsequent motion to sell. No

adequate protection was proposed for the existing tenants, and the notice

clearly stated that the sale was to be free of preexisting tenant leases.

Nonetheless, no tenants timely objected to the sale motion. However, after

the sale, a tenant objected to the entry of the order approving the sale. The

bankruptcy court entered the order approving the sale free and clear of the

tenant leases, and the objecting tenant appealed. The district court, citing

*Cheslock-Bakker*, was persuaded by the fact that the lease had not been

rejected but rather had been sold in a § 363 sale.[6] As in *Cheslock-Bakker,*

there was no indication that the transaction had been structured in any way

other than a sale of leasehold interests, and the lease had not been rejected.

The facts of *In re Samaritan Alliance, LLC*, No. 07-50735, 2007 WL

4162918 (Bankr. E.D. Ky. Nov. 21, 2007) most closely resemble the facts

before this court. In that case, the issue was whether the interest of the

debtor's sublessee had been included in the § 363 sale of substantially all of

the debtor's assets. The sublease had been rejected by the debtor prior to the

sale. The purchaser, among other things, maintained that the sale caused the

leasehold interest of the debtor to pass to it free and clear of the sublease.

The court compared the analysis of both *Haskell* and *Qualitech* and adopted

---

[6] The court, in a strong holding against tenants of debtors, noted that
"offering . . . adequate protection to a general unsecured creditor would
catapult it ahead of its position behind secured, administrative, and priority
unsecured creditors, in complete contravention of the priorities of the
Bankruptcy Code." *Id*. at *7.

the analysis of the court in *Haskell*. It therefore found that the § 365(h) rights

of the tenant survived the § 363 sale.

Here, LAP argues that the sale portion of the order should govern,

while D&MRE argues for the protections given by § 365 in an assumption

and assignment. The court, after considering the issue, has determined that

the dual nature of the transaction, while perhaps intended by the buyer and

seller to be a single transaction, must govern. The transaction was titled as a

sale free and clear *and* an assumption and assignment, and all parties had

notice therefore that the provisions of § 365 were thus implicated. Further,

the APA itself contained an Exhibit listing the leases to be assumed and

assigned and giving cure amounts, and the sublease of D&MRE was rejected

pursuant to the provisions of § 365. Thus, the assumption and assignment

must be considered as such and governed by the provisions of § 365, including

365(h). Therefore, the rights of D&MRE under § 365(h) survive the

transaction.

However, even if the court considers the transaction at issue as solely

in the nature of a § 363 sale, it would reach the same conclusion. The court

has evaluated the arguments contained in the *Qualitech* and *Haskell* lines of

cases and, as did the court in *Samaritan Alliance,* agrees with the conclusion

reached by the court in *Haskell*. The rights of the tenant may not be

extinguished by a § 363 sale; to hold to the contrary would give open license

to debtors to dispossess tenants by utilizing the § 363 sale mechanism. The

16

court cannot countenance this result, especially under the facts of this case,

when, as previously noted, 1) the transaction was titled as a sale free and

clear *and* an assumption and assignment, and 2) all parties had notice

therefore that the provisions of § 365 were thus implicated, 3) the APA itself

contained an Exhibit listing the leases to be assumed and assigned and

giving cure amounts, and 4) the sublease was specifically rejected pursuant

to the provisions of § 365. The court also notes that there is no adequate

protection proposed. This result will also be in accord with the legislative

history of § 365, which indicates the desire of Congress to preserve the rights

of a party to a real property lease that a lessor debtor has rejected.

The court limits its comments to the case before it, observing that it is

important that D&MRE's motion was made within ten days of the entry of

the order approving the asset transaction and promptly presented to the

court for resolution.

LAP argues that D&MRE's motion is barred by the principles of *res

judicata*, collateral estoppel and waiver. It further argues that the motion is

an impermissible collateral attack on the order approving the sale. However,

the D&MRE motion does not seek to set aside the sale; rather, it requests a

determination of the effect of the sale and so does not constitute an attack on

the sale order. As to *res judicata* and collateral estoppel, the court has never

passed on the effect of the transaction upon D&MRE or any other similarly

situated tenant. *Res judicata* is not therefore implicated, since application of

17

that doctrine requires that the claims in each matter be based upon the same cause of action. *See First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters.),* 81 F.3d 1310, 1315 (4th Cir. 1990). The prior cause of action here was whether the sale should be approved, and there was no consideration of what rights D&MRE would have as a result. Thus, *res judicata* is not implicated, despite the argument of LAP that the issue could have been raised. The issue did not have to be raised or addressed in order for the sale to be approved. The same logic applies to the issue of collateral estoppel or "issue preclusion," which requires that the issue must have been "actually and necessarily determined" in the prior action. *Id.* Finally, D&MRE did not waive its right to inquire as to the effect of the transaction on its leasehold interest, filing its inquiry within ten days of the entry of the order approving the transaction.

A separate order will be entered granting the "Motion for Entry of Order Recognizing Sublessee's Rights under Rejected Subleases" filed by D&MRE, LLC.

Signed:  <u>October 1, 2012</u>

<u>    /s/ Douglas O. Tice Jr.      </u>

Chief United States Bankruptcy Judge

18

Copies to:

Bruce E. Arkema
Kevin J. Funk
DurretteCrump PLC
1111 East Main Street, 16th Floor
Richmond, VA 23219

Steven L. Brown
Wolcott Rivers Gates
Convergence Center IV
301 Bendix Road, Suite 500
Virginia Beach, VA 23452

Douglas M. Foley
McGuireWoods LLP
9000 World Trade Center, 101 W. Main St.
Norfolk, VA 23510

Peter Barrett
Kutak Rock LLP
1111 East Main Street, Suite 800
Richmond, VA 23219-3500

Keith L. Phillips
311 South Boulevard
Richmond, VA 23220

Douglas Scott
Douglas A. Scott, PLC
1805 Monument Avenue
Suite 311
Richmond, VA 23220

Leonard E. Starr, III
P.O. Box 468
Sandston, VA  23150

Robert B. Van Arsdale
Office of the U. S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219

LAP Petroleum, LLC
Carl Eason, Esq.
Wolcot, Rivers, Gates
500 Bendix Rd, Suite 500
Virginia Beach, VA 23452